## Cottrell v. Amity Township School Board

*Walter H. Scott*, for petitioner.

*Bryan, Joslin & Bryan*, for defendant.

WADE, P. J., thirty-seventh judicial district, specially presiding, September 8, 1945.—Corington Alford, as guardian of Ruth Cottrell, a minor, brought this action of mandamus against the School Board of Amity

Township and Calla Rankin, Howard Hopson, Read Merry and Harold Smith, members of the school board.

The petition for the writ of mandamus seeks the right to command defendant to first "assign the said Ruth Cottrell to the Town Line School in said township; second, to furnish free transportation for the said Ruth Cottrell from the Alford home to the school and back again". The petition sets forth that the girl in question is 10 years of age, and is, consequently, entitled to the privileges of schooling at public expense and the incidents of such schooling. Ruth Cottrell attended school for the first two years, "beginning when she was seven years of age, at the Town Line School, until October 5, 1943. On or about this date defendant transferred Ruth to Hatch Hollow School "arbitrarily and without any reason". The petition avers that there is a difference as to distance between the two schools of 1.6 miles. The position of the petitioner is that this distance is greatly magnified because of the round-about route the bus takes in going to the Hatch Hollow School, which it is averred amounts to a travel of 18 miles per day.

The return of defendant sets forth that when Ruth Cottrell attended Town Line School the guardian complained that Ruth had to stand outside the school in all kinds of weather, waiting for the bus, in that there was no proper shelter. It was in response to this complaint by the guardian that the school board did transfer Ruth to the Hatch Hollow School. Defendants further aver that the Hatch Hollow School is as good as the Town Line School, and in some respects better.

Plaintiff's counsel states in his brief:

"The facts developed and the testimony shows that the Town Line School and the Hatch Hollow School have approximately the same educational facilities. The testimony shows that the teachers of those schools have approximately the same teaching ability."

Therefore, the questions narrow down to whether or not the board, under such circumstances, has the power to make a transfer of a student.

Counsel for plaintiff takes the position that "this is a plain manifestation of petty resentment because the Alfords dared to object to the child standing out in the rain and cold, waiting for a bus. It is a plain case of arbitrary use of the little authority vested in School Board of Amity Township".

It seems to this court that this case has its roots in a disagreement over the teacher of the Hatch Hollow School in attempting to send the sister of Ruth to Polk. The sister did not go to Polk and it is the contention of plaintiff that she is doing well in Meadville. The teacher at the Hatch Hollow School testified that she had valid reasons to believe the girl might be a subject for Polk, and there does not appear in the evidence any inhuman or vindictive purpose back of the examination of the sister for Polk. The county authorities testified and there was evidence from this source that this teacher is considered very good, and that she is in excellent standing. Counsel for the complainant alludes to this episode as follows:

". . . but they (defendants) wish to send her (Ruth) steps to send this girl's sister to Polk School, and that the sister is doing well at Meadville."

It is the opinion of this court that the objections to the route were well answered by Leon Dugaw, who is at present the bus driver over the route in question. However, a review of the record does not disclose any great hardship on the Alfords to have their girl transported to the Hatch Hollow School. The differences are so finely drawn that they have no great influence with this court, for the transportation supplied is manifestly adequate.

To return to the basis for this litigation, counsel for the complainant states:

"The school board knows how this child, Ruth Cottrell, would feel sending her to a teacher who had tried to do this (send the sister to Polk) to her sister, and the whole proposition is entirely unfair, unAmerican, and certainly smacks of Hitlerism to say the least."

This court is of the opinion that the testimony and the position of counsel in his brief show that the real basis of complaint is this action toward the sister. If a teacher is to be permanently marked as inhuman because she is of the opinion that a student is a subject for an institution and takes the proper steps to have the child so declared, there would be a most unusual situation. No teacher would dare to send a child to an opportunity room, nor to one of our institutions maintained for just such a purpose if the facts warranted. If a teacher acts arbitrarily in sending a student to an institution improper for her well being, and the facts warranted, suitable action could be taken. However, to use such a situation as a reason for not allowing a school board to transfer a sister of such person, although this person was not admitted to an institution, shows there is no legal basis for objection.

The basic statute for the exercise of a discretion of defendants in sending a student to a school is as follows:

"That the board of school directors may, upon cause shown, permit any pupil or pupils in any school district to attend such other school in said district as the board may deem proper, or may classify and assign the pupils in the district to any such school or schools therein as it may deem best, in order to properly educate the same . . .": Act of May 18, 1911, P. L. 309, sec. 1405; Act of May 13, 1925, P. L. 628, sec. 1, 24 PS §1377.

Under this statute this court is of the opinion that the School Board of Amity Township did not abuse its discretion, nor act arbitrarily in sending Ruth Cottrell to the Hatch Hollow School.

In any event under the law of mandamus this court cannot review a discretion, whether arbitrary or not. This act is a strict action and a narrow one. It deals merely with ministerial acts and not with acts of discretion.

"28. In general—It is a frequently asserted and universally recognized rule that mandamus only lies to enforce a ministerial act or duty; in this sense a ministerial duty may be briefly defined to be some duty imposed expressly by law, not by contract or arising necessarily as an incident to the office, involving no discretion in its exercise, but mandatory and imperative": Mandamus 18 R. C. L. 116, §28.

A very similar case involving a discretion of a school board was decided by the Superior Court in the case of Commonwealth ex rel. v. Bethlehem School District et al., 148 Pa. Superior Ct. 250, wherein the court said at page 257:

"The power of the board to assign teachers is not ministerial, but, within the limitations of the code, discretionary. 'Where a ministerial act is to be done, and there is no other specific remedy, a *mandamus* will be granted to do the act which is required. But where the complaint is against a person who acts in a judicial or deliberative capacity, he may be ordered by *mandamus* to proceed to do his duty, by deciding and acting according to the best of his judgment, but the court will not direct him in what manner to decide': Com. v. Cochran, 5 Binney 87, at page 103."

There is a similarity between assigning a teacher under the code and assigning a pupil under the code. This is especially true where the code, as it applies to pupils, states that it may be as the board "may deem best".

And now, to wit, September 8, 1945, the writ of alternative mandamus is dismissed at the cost of plaintiff.